**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MONICA CERRITOS CONSTANZA<br>c/o 519 H Street NW<br>Washington, DC 20001<br><br>BLANCA URQUILLA DIAZ<br>c/o 519 H Street NW<br>Washington, DC 20001<br><br>    Plaintiffs,<br><br>v.<br><br>NHV CORPORATION<br>d/b/a HAYDEE'S RESTAURANT<br>1737 Hobart Street NW<br>Washington, DC 20009<br><br>HAYDEE CORPORATION<br>d/b/a HAYDEE'S RESTAURANT<br>6303 Georgia Avenue NW<br>Washington, DC 20011<br><br>NIMIA HAYDEE VANEGAS<br>1737 Hobart Street NW<br>Washington, DC 20009<br><br>MARIO ERNESTO AYALA<br>1737 Hobart Street NW<br>Washington, DC 20009<br><br>    Defendants. | Civil Action No. _____ |

**COMPLAINT**

1.      Defendants collectively own and operate the two "Haydee's" restaurants in Washington, DC. Defendants denied Plaintiff Cerritos Costanza minimum and overtime wages by paying her a sub-minimum wage across all hours of work, including overtime hours. Defendants denied Plaintiff Urquilla Diaz minimum and overtime wages by paying her a sub-minimum wage for her reg-

-ular hours, and *no wages* for her overtime hours.

2.      Plaintiffs bring this action against NHV Corporation, Haydee Corporation, Nimia Haydee Vanegas, and Mario Ernesto Ayala ("Defendants") to recover damages for Defendants' willful failure to pay regular, minimum, and overtime wages, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; the District of Columbia Minimum Wage Act Revision Act ("DCMWA"), D.C. Code, § 32-1001 *et seq.*; and the District of Columbia Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301 *et seq.*

## Jurisdiction and Venue

3.      Jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b), because all Defendants reside in this district, or a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## Parties

5.      Plaintiff Monica Cerritos Constanza is an adult resident of the District of Columbia

6.      Plaintiff Blanca Urquilla Diaz is an adult resident of the District of Columbia.

7.      Defendant NHV Corporation is a District of Columbia corporation. It does business as Haydee's Restaurant. Its principal place of business is listed as 1737 Hobart Street NW, Washington, DC 20009. However, it operates the "Haydee's" restaurant located at 3102 Mount Pleasant Street NW, Washington, DC 20010 ("Haydee's Mt. Pleasant"). Its registered agent for service of process is Defendant Nimia Haydee Vanegas, 1737 Hobart Street NW, Washington, DC 20009.

8. Defendant Haydee Corporation is a District of Columbia corporation. It also does business as Haydee's Restaurant. Its principal place of business is located at 6303 Georgia Avenue NW, Washington, DC 20011. It operates the "Haydee's" restaurant located in 6303 Georgia Avenue NW, Washington, DC 20011 ("Haydee's Georgia Ave."). Its registered agent for service of process is also Defendant Nimia Haydee Vanegas, 1737 Hobart Street NW, Washington, DC 20009.

9. Defendant Nimia Haydee Vanegas is an adult resident of the District of Columbia. She resides at 1737 Hobart Street NW, Washington, DC 20009. She is an owner and officer of Defendants NHV Corporation and Haydee Corporation. In partnership with Defendant Mario Ernesto Ayala, she exercises exclusive control over the operations of NHV Corporation and Haydee Corporation — including their pay practices.

10. Defendant Mario Ernesto Ayala is an adult resident of the District of Columbia. He resides at 1737 Hobart Street NW, Washington, DC 20009. He is an owner and officer of Defendants NHV Corporation and Haydee Corporation. In partnership with Defendant Nimia Haydee Vanegas, he exercises exclusive control over the operations of NHV Corporation and Haydee Corporation — including their pay practices.

11. Defendants Nimia Haydee Vanegas and Mario Ernesto Ayala are married.

### Factual Allegations Specific to Plaintiff Cerritos Constanza

12. Plaintiff Cerritos Constanza worked for Defendants from approximately May 6, 2019 through approximately September 5, 2021.

13. During most of her employment by Defendants, Plaintiff Cerritos Constanza worked concurrently at both "Haydee's" restaurants. That is, she worked at both locations in the same workweek.

14. At both locations, Plaintiff Cerritos Constanza worked as a kitchen laborer and server.

15. At both locations, Plaintiff Cerritos Constanza's job duties primarily consisted of preparing and cooking food, organizing kitchen supplies, cleaning tables, taking customer orders, and cleaning her work station at the end of each shift.

16. In addition, Plaintiff Cerritos Constanza performed other for Defendants, including cleaning and disinfecting Defendants' rental units located above the Haydee's Mt. Pleasant.

17. Plaintiff Cerritos Constanza typically and customarily worked seven days per week.

18. Plaintiff Cerritos Constanza typically and customarily worked Sunday through Friday at Haydee's Mt. Pleasant, and Saturday at Haydee's Georgia Ave.

19. Plaintiff Cerritos Constanza typically and customarily worked ninety hours per week.

20. However, at the beginning of the Covid-19 pandemic, Defendants reduced her hours. Specifically, from approximately March 9, 2020 through approximately May 31, 2020, Plaintiff Cerritos Constanza worked twelve hours per week. Then from approximately June 1, 2020 through December 31, 2020, Plaintiff Cerritos Constanza worked fifty-two and a half hours per week. Plaintiff Cerritos Constanza returned to her ninety-hour schedule in 2021.

21. At all relevant times, Defendants paid Plaintiff Cerritos Constanza by the hour.

22. At all relevant times, Defendants paid Plaintiff Cerritos Constanza $9.00 per hour.

23. At all relevant times, Defendants paid Plaintiff Cerritos Constanza in cash.

24. At all relevant times, Plaintiff Cerritos Constanza worked more than forty hours per workweek for Defendants.

25. At all relevant times, Defendants paid Plaintiff Cerritos Constanza the same regular hourly rate across all hours worked, including when she worked more than forty hours in a workweek.

26. At all relevant times, Defendants did not pay Plaintiff Cerritos Constanza overtime wages — or one and one-half times her regular hourly rate for hours worked in excess of forty in a workweek.

27. In addition to not paying overtime wages, Defendants did not pay Plaintiff Cerritos Constanza the applicable D.C. minimum wage.

28. The District of Columbia required that employers pay non-exempt employees at least $13.25 per hour from July 1, 2018 through June 30, 2019, $14.00 per hour from July 1, 2019 through June 30, 2020, $15.00 per hour from July 1, 2020 through June 30, 2021, and $15.20 per hour from July 1, 2021 through the present. D.C. Code § 32-1003(a).

29. For Plaintiff Cerritos Constanza's work in the three years preceding the filing of this Complaint, Defendants owe Plaintiff Cerritos Constanza approximately **$74,000.00** in minimum and overtime wages (excluding liquidated damages).

### Factual Allegations Specific to Plaintiff Urquilla Diaz

30. Plaintiff Urquilla Diaz worked for Defendants from approximately August 2003 through approximately August 12, 2021.

31. During the three years prior to the filing of this complaint, she took two leaves of absence: (1) from approximately March 12, 2020 through approximately June 27, 2020, and (2) from approximately February 15, 2021 through approximately June 9, 2021.

32. Plaintiff Urquilla Diaz worked at Haydee's Mt. Pleasant as a server.

33. Plaintiff Urquilla Diaz's job duties at Haydee's Mt. Pleasant primarily consisted of taking customer orders, serving food, making drinks, picking up after customers, sweeping floors, cleaning bathrooms, and receiving deliveries.

34. Plaintiff Urquilla Diaz also assisted Defendants with renting out the apartments and offices located above Haydee's Mt. Pleasant.

35.    At all relevant times, Plaintiff Urquilla Diaz typically and customarily worked six to seven days a week.

36.    At all relevant times, Plaintiff Urquilla Diaz typically and customarily worked between ten and fifteen hours a day.

37.    Before her 2021 leave of absence — or from approximately May 1, 2019 through approximately February 14, 2021 — Plaintiff Urquilla Diaz typically and customarily worked eighty-seven hours per week.

38.    After her 2021 leave of absence — or from approximately June 15, 2021 through approximately August 12, 2021 — Plaintiff Urquilla Diaz typically and customarily worked approximately seventy-five and a half hours per week.

39.    *When Defendants actually paid Plaintiff Urquilla Diaz an hourly wage,* Defendants paid her approximately the following hourly rates:

| Approximate Dates | Hourly Rates |
|---|---|
| May 01, 2019–Jun. 28, 2020 | $3.89 |
| Jun. 29, 2020–Feb. 14, 2021 | $4.45 |
| Jun. 15, 2021–Aug. 12, 2021 | $4.45 |

40.    Defendants never Plaintiff Urquilla Diaz an hourly wage for all her hours of work in a workweek. Typically, Defendants only paid her for 25 – 40 of her regular hours. Defendants never paid her anything for her overtime hours.

41.    Defendants did not pay Plaintiff Cerritos Constanza the applicable federal or D.C. minimum wage.

42.    At all relevant times, the federal minimum wage was $7.25 per hour. 29 U.S.C. § 206(a)(1).

43. The District of Columbia required employers to pay non-exempt employees at least $13.25 per hour from July 1, 2018 through June 30, 2019, $14.00 per hour from July 1, 2019 through June 30, 2020, $15.00 per hour from July 1, 2020 through June 30, 2021, and $15.20 per hour from July 1, 2021 through the present. D.C. Code § 32-1003(a).

44. In addition to not paying minimum wages, Defendants did not pay Plaintiff Urquilla Diaz overtime wages.

45. At all relevant times, Plaintiff Urquilla Diaz worked more than forty hours per workweek for Defendants.

46. At all relevant times, Defendants did not pay Plaintiff Cerritos Constanza overtime wages — or one and one-half times her regular hourly rate for hours worked in excess of forty in a workweek.

47. Finally: starting in October 2020, Defendant Nimia Haydee Vanegas began to regularly confiscate a portion of the tips earned by Plaintiff Urquilla Diaz.

48. Defendant Nimia Haydee Vanegas confiscated about $300.00–$500.00 per week in tips, or approximately $12,000.00 over the course of Plaintiff Urquilla Diaz's employment.

49. For Plaintiff Urquilla Diaz's work in the three years preceding the filing of this Complaint, Defendants owe her approximately **$87,000.00** in regular, minimum, and overtime wages (excluding liquidated damages).

### Factual Allegations Specific to the Individual Defendants

50. Defendant Nimia Haydee Vanegas hired and fired employees on behalf of NHV Corporation and Haydee Corporation.

51. Defendant Nimia Haydee Vanegas participated in the decisions to hire Plaintiffs.

52. Defendant Nimia Haydee Vanegas participated in the decisions to set Plaintiffs' work schedule.

53. Defendant Nimia Haydee Vanegas participated in the decisions to set and Plaintiffs' rate and manner of pay.

54. Defendant Nimia Haydee Vanegas participated in supervising Plaintiffs' work.

55. Defendant Nimia Haydee Vanegas had the authority to sign checks on behalf of NHV Corporation and Haydee Corporation.

56. Defendant Nimia Haydee Vanegas has signed checks on behalf of NHV Corporation and Haydee Corporation.

57. Defendant Mario Ernesto Ayala fired and fired employees on behalf of NHV Corporation and Haydee Corporation.

58. Defendant Mario Ernesto Ayala participated in the decisions to hire Plaintiffs.

59. Defendant Mario Ernesto Ayala participated in the decisions to set Plaintiffs' work schedule.

60. Defendant Mario Ernesto Ayala participated in the decisions to set Plaintiffs' rate and manner of pay.

61. Defendant Mario Ernesto Ayala participated in supervising Plaintiffs' work.

62. Defendant Mario Ernesto Ayala had the authority to sign checks on behalf of NHV Corporation and Haydee Corporation.

63. Defendant Mario Ernesto Ayala has signed checks on behalf of NHV Corporation and Haydee Corporation.

64. At all relevant times, Defendants Nimia Haydee Vanegas and Mario Ernesto Ayala coordinated Plaintiff Cerrito Constanza's concurrent employment at Haydee's Georgia Ave. and Haydee's Mt. Pleasant to avoid scheduling conflicts.

65. At all relevant times, each Defendant had the power to hire and fire Plaintiffs.

66. At all relevant times, each Defendant had the power to control Plaintiffs' work schedule.

67. At all relevant times, each Defendant had the power to supervise and control Plaintiffs' work.

68. At all relevant times, each Defendant had the power to set Plaintiffs' rate and manner of pay.

## Factual Allegations Specific to the "Tip Credit"

69. Defendants did not comply with the tip credit notice requirements of the FLSA and the DCMWA. *See* 29 U.S.C. 203(m)(2); D.C. Code § 32-1003(g); D.C. Code § 32-1008(b)–(c).

70. Among other important omissions, Defendants did not notify Plaintiffs that:

    a. Defendants intended to take a tip credit;

    b. Plaintiffs were entitled to a minimum cash wage;

    c. Plaintiffs' cash wage combined with Plaintiffs' tips must result in an effective wage equal to or greater than the minimum wage for non-tipped employees; and

    d. Plaintiffs were entitled to keep their tips.

71. During the entirety of their employment by Defendants, Plaintiffs never received a single itemized statement from Defendants pursuant to D.C. Code § 32-1008(b) (requiring paystubs).

72. During the entirety of their employment by Defendants, Plaintiffs never received a single written notice from Defendants pursuant to D.C. Code § 32-1008(c) (requiring detailed notice of the terms of compensation at hiring and upon changes).

73. Defendants never submitted "quarterly wage report[s]" for each of their tipped employees to the District of Columbia, as required by the DCMWA. See D.C. Code § 32-1009.01.

74. Defendants did not always allow Plaintiffs or other employees to keep all of the tips that they had earned. Without explanation, Defendants often confiscated a significant percentage of some employee's tips.

75. Defendants did not pay Plaintiffs and some other tipped employees a minimum cash wage for all of the hours that they worked. For example, Defendants did not pay Plaintiff Urquilla Diaz any wages for many of her hours. Instead, Plaintiff was only compensated for these hours by being allowed to keep a *portion* of her tips.

76. Defendants are ineligible for a "tip credit" against their obligation to pay Plaintiffs the minimum wage.

## General Factual Allegations

77. At all relevant times, each Defendant was aware that they were legally required to pay Plaintiffs one and one-half times their regular hourly rate for all hours worked in excess of forty hours in any one workweek.

78. At all relevant times, each Defendant was aware that they were legally required to pay Plaintiffs the applicable federal and D.C. minimum wages.

79. At all relevant times, each Defendant was aware that they were legally required to timely pay Plaintiffs all wages legally due to them.

80. At all relevant times, the annual gross volume of Defendants' business exceeded $500,000.00.

81. At all relevant times, Defendants had two or more employees who handled goods and/or materials that had traveled in or been produced in interstate commerce.

82. At all relevant times, Defendants had employees who handled food products, such as chicken, beef, or vegetables, that had been raised or grown outside of the District of Columbia.

## COUNT I
### FAILURE TO PAY MINIMUM AND OVERTIME WAGES UNDER THE FLSA

83. Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

84. Each Defendant was an "employer" of Plaintiffs within the meaning of the FLSA. 29 U.S.C. § 203(d).

85. The FLSA requires that employers pay non-exempt employees at least $7.25 per hour. 29 U.S.C. § 206(a)(1).

86. The FLSA requires employers to pay non-exempt employees one and one-half times their regular hourly rate for hours worked in excess of forty hours in any one workweek. 29 U.S.C. § 207(a)(1). This regular hourly rate cannot be lower than the applicable state or local minimum wage. 29 C.F.R. § 778.5.

87. Defendants violated the FLSA by knowingly failing to pay Plaintiffs at least $7.25 for each hour of work.

88. Defendants violated the FLSA by knowingly failing to pay Plaintiffs at least one and one-half times their regular hourly rate for hours worked in excess of forty hours in any one workweek.

89. Defendants' violations of the FLSA were willful.

90. For Defendants' violations of the FLSA, Defendants are liable to Plaintiffs for unpaid overtime wages, an equal amount as liquidated damages, reasonable attorney's fees and expenses, court costs, interest, and any other relief deemed appropriate by the Court.

## COUNT II
### FAILURE TO PAY MINIMUM AND OVERTIME WAGES UNDER THE DCMWA

91. Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

92. Each Defendant was an "employer" of Plaintiffs within the meaning of the DCMWA. D.C. Code § 32-1002(3).

93. The DCMWA required that employers pay non-exempt employees at least $13.25 per hour from July 1, 2018 through June 30, 2019, and $14.00 per hour from July 1, 2019 through June 30, 2020, $15.00 per hour from July 1, 2020 through June 30, 2021, and $15.20 per hour from July 1, 2021 through the present. D.C. Code § 32-1003(a).

94. The DCMWA requires employers to pay non-exempt employees one and one-half times their regular hourly rate for hours worked in excess of forty hours in any one workweek. D.C. Code § 32-1003(c).

95. Defendants violated the DCMWA by knowingly failing to pay the required minimum wage to Plaintiffs.

96. Defendants violated the DCMWA by knowingly failing to pay Plaintiffs at least one and one-half times their regular hourly rate for hours worked in excess of forty hours in any one workweek.

97. Defendants' violations of the DCMWA were willful.

98. For Defendants' violations of the DCMWA, Defendants are liable to Plaintiffs for unpaid minimum and overtime wages, an amount equal to three times the unpaid minimum and overtime wages as liquidated damages, reasonable attorney's fees and expenses, court costs, interest, and any other relief deemed appropriate by the Court.

## COUNT III
### FAILURE TO PAY WAGES UNDER THE DCWPCL

99. Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

100. Each Defendant was an "employer" of Plaintiffs within the meaning of the DCWPCL. D.C. Code § 32-1301(1B).

101. The DCWPCL requires employers to pay an employee who is discharged no later than the working day following the discharge. D.C. Code § 32-1303(1).

102.    The DCWPCL requires employers to pay an employee who quits or resigns all wages due upon the next regular payday, or within 7 days from the date of quitting or resigning, whichever is earlier. D.C. Code § 32-1303(2).

103.    For purposes of the DCWPCL, "wages" include, among other things, gratuities, regular, minimum, and overtime wages. D.C Code § 32-1301(3).

104.    Defendants violated the DCWPCL by knowingly failing to timely pay Plaintiffs all wages due, including regular, minimum, and overtime wages.

105.    Defendants' violations of the DCWPCL were willful.

106.    For Defendants' violations of the DCWPCL, Defendants are liable to Plaintiffs for unpaid wages, an amount equal to three times the amount of unpaid wages as liquidated damages, reasonable attorney's fees and expenses, court costs, interest, and any other relief deemed appropriate by the Court. *See Sivaraman v. Guizzetti & Assocs.*, 228 A.3d 1066, 1072 (D.C. 2020) ("[T]reble damages are mandatory, not discretionary, if requested."); *Martinez v. Asian 328, LLC*, 220 F. Supp. 3d 117, 123 (D.D.C. 2016) ("[T]he liquidated-damages provision of the DCWPCL awards treble damages as liquidated damages *in addition to* the actual damages in the form of unpaid wages.").

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants, jointly and severally, on all counts, in the current total amount of **$655,044.40** and grant the following relief:

    a.    Award Plaintiffs $644,000.00, consisting of the following overlapping elements:

        i.    unpaid minimum and overtime wages, plus an equal amount as liquidated damages, pursuant to the FLSA, 29 U.S.C. § 216;

      ii.     unpaid D.C. minimum and overtime wages, plus three times the amount of unpaid wages as liquidated damages, pursuant to the DCMWA, D.C. Code § 32-1012;

      iii.    unpaid wages, plus three times the amount of unpaid wages as liquidated damages, pursuant to the DCWPCL, D.C. Code §§ 32-1303(4) and 32-1308;

b.    Award Plaintiffs pre-judgment and post-judgment interest as permitted by law;

c.    Award Plaintiffs attorney's fees and expenses computed pursuant to the matrix approved in *Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000), and updated to account for the current market hourly rates for attorney's services, pursuant to the DCWPCL, D.C. Code § 32-1308(b)(1) (as of this date, approximately $10,642.40);

d.    Award Plaintiffs court costs (currently, $402.00); and

e.    Award any additional relief the Court deems just.

May 8, 2022                                            Respectfully submitted,

                                                            **DCWAGELAW**

                                                            By: /s/ Justin Zelikovitz
                                                            JUSTIN ZELIKOVITZ, #986001
                                                            519 H Street NW
                                                            Washington, DC 20001
                                                           Phone: (202) 803-6083
                                                           Fax: (202) 683-6102
                                                           justin@dcwagelaw.com

                                                           *Counsel for Plaintiffs*